FILED

2013 Mar-22  AM 09:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

BRENT E. GORDON,                )
     Plaintiff,                )
                                 )
     vs.                )     4:11-CV-02636-LSC
                                 )
CAROLYN W. COLVIN,                )
Commissioner of Social Security,                )
     Defendant.                )

MEMORANDUM OF OPINION

I.    Introduction

The plaintiff, Brent E. Gordon, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI").  Mr. Gordon timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Gordon was forty-six years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has an eighth grade education. (Tr. at 25.)  In addition, he later earned a GED and attended junior college for 2 months. (*Id.*)  His past work experiences include employment as a construction carpenter. (*Id.*)  Mr. Gordon claims that he became disabled on January 13, 2008, due to back and right foot

pain, hepatitis C, and residual effects of his cancer treatment including: dry throat and mouth, neck cramps, ringing in his ears, weakness, and headaches. (*Id.*)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. § 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. § 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. § 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a

determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. § 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. Gordon has not engaged in substantial gainful activity since the alleged onset of his disability.  (Tr. at 33.)  According to the ALJ, Plaintiff's back pain secondary to degenerative joint disease of the lumbar spine; hypertrophic changes arthritis of the right AC joint; and squamous cell carcinoma status post cervical lymph node biopsy by history, are "severe" based on the requirements set forth in the regulations.  (*Id*. at 33-34.)  However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.  (*Id*. at 34.)  The

ALJ did not find Mr. Gordon's allegations to be totally credible, and he determined that he has the following residual functional capacity: light work which allows him to sit and stand at his option; he is restricted to occasional bending, stooping, and climbing; and he is unable to engage in either right upper extremity pushing or pulling or the operation of hazardous machinery.  (*Id.*)

According to the ALJ, Mr. Gordon is unable to perform any of his past relevant work, he is a "younger individual," and he has an "8th grade education with a GED." (*Id.*)  He determined that although the plaintiff has a skilled background, his skills are not transferable to the level of work that he is now capable of performing.  (*Id.* at 33.) Even though Plaintiff cannot perform the full range of light work, the ALJ used Medical-Vocation Rule 202.21 as a guideline for finding that there are still a significant number of jobs in the national economy that he is capable of performing, such as a hand assembler, hand sorter, machine monitor, surveillance monitor, and information clerk.  (*Id.* at 34.)  The ALJ concluded his findings by stating that Plaintiff "is not disabled within the meaning of the Social Security Act."  (*Id.*)

II.     Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court

Page 5 of  23

scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Mr. Gordon alleges that the Commissioner's decision should be reversed and remanded for three reasons. First, Plaintiff claims that the Appeals Council did not give sufficient consideration to additional evidence he submitted after the ALJ's decision. (Doc. 8 at 11-14.) Plaintiff contends that when the entire record is considered in light of this additional evidence, the Commissioner's decision is not supported by substantial evidence. (*Id.*) In addition, Plaintiff argues that, even without considering the additional evidence, the ALJ's decision should be reversed for two reasons. First, the plaintiff believes that the ALJ failed to give proper weight to the opinions of his treating physicians. (Doc. 8 at 15.) Finally, Plaintiff contends that the ALJ's decision that he can occasionally bend is not supported by substantial evidence. (Doc. 8 at 14.)

### A.   Additional Evidence Submitted to the Appeals Council

After the ALJ's decision, Plaintiff submitted additional evidence to the Appeals Council ("AC") consisting of: 1) treatment notes from Dr. H. Bernice Craze dated

January 27, May 19, and October 6, 2010 (Tr. at 392-96); 2) treatment notes from Dr. S. Aggarwal dated January 17 and February 14, 2011 (Tr. at 397-401); and 3) Dr. Aggarwal's March 14, 2011, opinions that Plaintiff's alleged fatigue/weakness, physical functional limitations, and pain render him disabled.   (Tr. at 402-07.) Plaintiff challenges the decision of the AC to deny review of his case despite his submission of this additional evidence.   Plaintiff claims that the AC did not properly consider his additional evidence and that, when added to the record as a whole, this new evidence renders the Commissioner's decision erroneous.

The first question is whether the AC gave adequate consideration to the plaintiff's additional evidence.   The AC "must consider new, material, and chronologically relevant evidence and must review the case if the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007).   *See also* 20 C.F.R. § 404.970 ("The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision.").   If the AC refuses to consider new evidence submitted by the plaintiff and denies review, its decision is subject to judicial review because it is an error of law.   *Barclay v. Comm'r of Soc. Sec. Admin.*, 274 F. App'x 738, 743 (11th Cir. 2008) (*citing Keeton v. Dep't of*

*Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).  When reviewing the AC's denial of review, the Court must "look at the pertinent evidence to determine if the evidence is new and material, the kind of evidence the AC must consider in making its decision whether to review an ALJ's decision." *Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir. 1998).

In this case, the AC gave at least some consideration to Plaintiff's new evidence. The AC stated that it considered both the reasons Plaintiff disagreed with the ALJ's decision and his additional evidence, but found that none of this information provided a basis for changing the ALJ's decision.  (Tr. at 6-7.)  Specifically, the AC stated that Plaintiff's new evidence did not warrant review because it does not address the time period considered by the ALJ.  (*Id.*)  As noted above, the AC only has an obligation to review evidence that is relevant to the time period considered by the ALJ.  *See Ingram*, 496 F.3d at 1261; 20 C.F.R. § 404.970.  Therefore, the AC did not err by failing to *consider* the new evidence presented by Plaintiff.

Plaintiff, however, claims that the new evidence indicates that he is "suffering from severe or disabling fatigue, pain and functional limitations," and that it creates a "reasonable possibility" that the ALJ would have reached a different result.  (Doc. 8 at 14.)  The Eleventh Circuit has held that "when a claimant [has] properly present[ed] new evidence to the Appeals Council, a reviewing court must consider

Page 8 of 23

whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. The Commissioner raises two arguments to undermine the effectiveness of the new evidence. First, the Commissioner claims that the evidence is not chronologically relevant. Second, the Commissioner claims that the new evidence does not consistently establish the plaintiff's level of disability or his functional limitations.

As stated previously, any additional evidence submitted to the AC must pertain to the time period considered by the ALJ. "The Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 416.1470(b). All of Plaintiff's new evidence is dated at least three months after the ALJ's October 20, 2009, decision, and it shows no deterioration in Plaintiff's condition through the time period of the ALJ's decision. (Tr. at 7.) However, the fact that new evidence is dated after the ALJ's decision does not necessarily make it irrelevant. *See, e.g.*, *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983) (finding that, on remand, the Secretary should give a treating physician's opinion "significant weight notwithstanding that he did not treat the claimant until after the relevant determination date"). Plaintiff contends that the opinions of Dr. Aggarwal, finding that Plaintiff suffers from a "chronic" pain condition, relate back to the period in question. Dr. Aggarwal

rendered his three March 14, 2011 opinions approximately 17 months after the ALJ's decision.  In only one of these three opinions, Dr. Aggarwal stated in a clinical assessment of pain that the disabling severity of Plaintiff's pain has existed for over 30 years. (Tr. at 407.)  However, this opinion is inconsistent with the other evidence of record, as Plaintiff continued to work until his cancer diagnosis in 2005 and does not even claim that his disability began until January 13, 2008.  (Tr. at 25, 22, 101.)  In sum, the vast majority of Plaintiff's additional evidence does not relate back to the period in question before the ALJ, and the one opinion that arguably relates back is contradicted by other evidence of record, including the plaintiff's own statements.

Even assuming *arguendo* that the additional evidence establishes a pain condition relating back to the appropriate time period, Plaintiff's new evidence does not undermine the ALJ's determination that the plaintiff can perform light or sedentary work.  In fact, Dr. Craze's January 27, 2010 treatment notes show that Plaintiff's cancer was completely gone and he was back to status quo, and Dr. Craze simply recommended "exercise, exercise, exercise." (Tr. at 396.)  In her October 6, 2010 progress notes, Dr. Craze "stressed the importance of regular exercise" and recommended that the plaintiff engage in aerobic activity four times per week or more. (Tr. at 394.)  In addition, Dr. Craze opined that she would not continue to prescribe

pain medication for the plaintiff and recommended that he seek another physician in order to continue receiving pain medication. (*Id.*)

Dr. Craze then referred Plaintiff to Dr. Aggarwal, who continued to prescribe pain medication to Plaintiff and opined that he had a substantial degree of disability. (Tr. at 398-407.) However, Dr. Aggarwal did not cite any clinical findings supporting this opinion, and when he was given an opportunity to opine whether there had been a change in Plaintiff's restrictions since a given date, he was silent. (Tr. at 404-05.) Further, Dr. Aggarwal's January 17, 2011 treatment notes show that despite Plaintiff's complaints of severe back, neck, and leg pain, Plaintiff had not had any surgery or pain injections, but had been managed on pain medication with significant benefits. (Tr. at 39.) Dr. Aggarwal's exam that day showed normal extremities, only moderate tenderness, and normal sensation and reflexes. (Tr. at 400.) His February 14, 2011 treatment notes show Plaintiff reported continued benefit from pain medication, and his normal neuromuscular exam was unchanged. (Tr. at 398.) The internal inconsistencies between Dr. Aggarwal's January and February 2011 treatment notes showing normal findings, and his March 2011 statement on the clinical pain assessment form that Plaintiff experienced disabling pain, undermine the effectiveness of Dr. Aggarwal's opinions, especially considering that he cited no need for any intervening treatment. Additionally, the inconsistencies between the opinions and

Page 11 of  23

treatment regimens of Dr. Craze and Dr. Aggarwal undermine the effectiveness of Plaintiff's new evidence.

In sum, the aforementioned evidence is irrelevant to the period under consideration by the ALJ and even if it was, it is not "relevant and probative so that there is a reasonable probability that it would change the administrative result." *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987). Even considering the additional evidence, substantial evidence supports the Commissioner's decision and the AC did not err in refusing review because the ALJ's decision is not contrary to the weight of the evidence.

B.     Treating Physicians' Diagnoses

Plaintiff contends that the ALJ improperly evaluated his treating physicians' opinions. (Doc. 8 at 14-15.) Specifically, Plaintiff notes that Dr. Childs's January 3, 2006 letter reported that Plaintiff was suffering from "significant side effects" as a result of his cancer treatment. (Doc. 8 at 15.) Plaintiff also notes Dr. Brewer's opinions that Plaintiff "has a significant degree of disability that interferes with his ability to work in the capacity that he has worked previous in his life," included in letters dated September 27, 2007, and June 2, 2009. (*Id.*)

Though not controlling on whether Plaintiff is disabled, a treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is

shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted).  The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

In this case, the ALJ assigned Dr. Childs's opinions and Dr. Brewer's opinions "minimal but not controlling weight." (Tr. at 31.)  The question, then, is whether the ALJ had "good cause" to discount the opinions of these treating physicians.

Dr. Childs opined in his January 3, 2006 letter that Plaintiff was suffering significant side effects from cancer treatment, "including esophageal side effects and fatigue." (Tr. at 368.) Dr. Childs continued, "I consider him to be disabled from this. He may be able to return to work in the future based on his recovery but, for now, we will have to take this on a week-by-week basis." (*Id.*) Dr. Brewer's September 27, 2007 letter notes many of the same conditions, including "significant side effects for [cancer] treatment including esophageal side effects and fatigue." (Tr. at 370.) Dr. Brewer also noted that Plaintff had "a history of some back problems and left heel pain secondary chronic calcaneal fracture." (*Id.*) Dr. Brewer opined that "[Plaintiff] has a significant degree of disability that interferes with his ability to work in the capacity that he has worked previous in his life. He may be able to return to work in the future in a diminished capacity from his previous physical labor." (*Id.*) The June 2, 2009 letter restates Dr. Brewer's findings related to the side effects from his cancer treatment and adds new diagnoses including: severe osteoarthritis in Plaintiff's left heel; severe lumbar degenerative disease; cervical disease with multiple levels of osteoarthritic spurring; and finally that Plaintiff is in the process of having all of his teeth removed secondary to his cancer treatment. (Tr. at 391.)

As an initial matter, even if these opinions were granted controlling weight, they would not necessarily undermine the ALJ's decision that Plaintiff is not disabled.

Page 14 of  23

Though both physicians found that Plaintiff would not likely be able to resume his prior work activities, neither physician foreclosed the possibility that Plaintiff might be able to perform a lighter level of work at some point in the future.  The ALJ's decision is in substantial agreement with the opinions of these physicians.  The ALJ first found that Plaintiff is unable to perform his previous work, but that Plaintiff could work at a lighter exertional level.  Therefore, even if afforded controlling weight, neither of the physician's opinions would preclude the ALJ's determination that Plaintiff is now able to perform a lighter level of work.

However, the ALJ also did not err in giving minimal weight to these opinions. As noted by the Commissioner, neither Dr. Childs nor Dr. Brewer assessed any specific, functional limitations. (Doc. 10 at 7.) The physicians' opinions that Plaintiff was "disabled" are conclusory opinions on an issue reserved to the Commissioner, and not to doctors.  *See* 20 C.F.R. §§ 404.1527(e), 416.927(d) (instructing that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability").  The Court is interested in the physicians' evaluations of the plaintiff's "condition and the medical consequences thereof, not

Page 15 of  23

their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c).

In this case, the ALJ determined that the available evidence did not bolster the treating physicians' opinions. The ALJ discounted Dr. Childs's opinion because he found that "there is no documentary evidence supporting his opinion or that [Plaintiff] ever returned for follow up of any kind with his oncologist or ENT regarding his alleged side effects from cancer treatment." (Tr. at 31.) The ALJ stressed that Plaintiff only returned to Dr. Childs once in the three years after completing his cancer treatment, a visit that occurred approximately one month prior to Plaintiff's administrative hearing. (*Id.*) In addition, the ALJ found that Dr. Childs's opinion was inconsistent with the December 21, 2005 opinion of Plaintiff's treating ENT physician, Dr. Martin, which stated that Plaintiff "had a great response to his [cancer] treatment," and that he was "neurologically intact, eating well, and that his cancer was resolved." (Tr. at 10.) In discounting Dr. Brewer's opinion, the ALJ again noted that "the record reveals relatively infrequent trips to the doctor for the allegedly disabling symptoms." (Tr. at 31.) The ALJ also notes that Dr. Brewer's records do not show consistent complaints or treatment for "dry throat and mouth,

neck cramps, ringing in his ears, weakness, and headaches." (*Id.*) The ALJ concluded that the preponderance of available evidence fails to corroborate the degree of debilitating side effects asserted in the physicians' opinions. (*Id.*)

As noted above, the question for this Court is whether the ALJ's decision is supported by substantial evidence in the record. *See Richardson*, 402 U.S. at 401. An analysis of the record in this case reveals substantial evidence discounting the level of disability claimed by Dr. Childs and Dr. Brewer. First, in November 2005, only two months prior to his opinion at issue, Dr. Childs reported that Plaintiff had very little residual effects from his cancer treatments. (Tr. at 306.) Second, in December 2005, Dr. Martin, Plaintiff's treating ENT physician, reported that Plaintiff was neurologically intact, eating well, had a great response to treatment, and his cancer was resolved. (Tr. at 290-93.) Third, an examining physician, Dr. Roberts, found on March 5, 2008, that: (1) Plaintiff had normal range of motion in all extremity joints, except for his right shoulder; (2) Plaintiff had normal back range of motion with only mild pain and direct tenderness; (3) Plaintiff's straight leg raise testing was negative bilaterally; (4) Plaintiff could squat, stoop/bend, and heel/toe walk without difficulty, and his gait was normal without need of an assistive device; and (5) Plaintiff's neurological exam was negative. (Tr. at 337-39.) In addition, Plaintiff did not complain to Dr. Roberts of residual side effects from cancer treatment. (*Id.*) Each of

Page 17 of 23

these items of medical evidence conflicts with the opinions of Drs. Childs and Brewer that Plaintiff experienced disabling conditions.

When the record is viewed as a whole, substantial evidence supports the ALJ's decision to give minimal weight to the conclusory opinions of Drs. Childs and Brewer. In addition, as the ALJ noted, after completion of his cancer treatment, Plaintiff had at best infrequent contact with these treating physicians. (Tr. at 31.) Even if this lack of treatment was due to Plaintiff's poverty, as alleged by Plaintiff, this still undermines the weight that should be given to the opinions of Drs. Childs and Brewer. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d) (providing that treatment relationship is a factor to consider in assigning weight). In fact, Dr. Roberts, the examining physician, saw Plaintiff almost as many times as Drs. Childs and Roberts saw him after the conclusion of Plaintiff's cancer treatments.

The plaintiff cites two cases to support his claim that the ALJ did not give proper weight to his treating physicians' opinions. In the first, *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982), the Eleventh Circuit held that the ALJ did not give proper weight to the treating physician's opinion. *Id.* at 1390. However, in that case the court found it dispositive that the ALJ's decision did not "mention [the treating physician], let alone reveal what weight, if any, the ALJ gave to the treating physician's evidence." *Id.* at 1389. In this case, the ALJ clearly addressed the

opinions of Plaintiff's treating physicians and revealed his reasons to discount their opinions.

Plaintiff's second case is also distinguishable. In that case, the Fifth Circuit reversed a finding that the claimant could perform sedentary work. *Smith v. Schweiker*, 646 F.2d 1075, 1082 (5th Cir. 1981). The court stressed that the opinion of a "one-shot" examining physician "may lack substantiality when relied on by the Secretary to contradict the opinion of a longstanding treating physician." *Id*. at 1081. The court also noted that the opinion of a physician who had familiarity with the patient's condition over a "considerable length of time" should be given "considerable weight." *Id*. In this case, the ALJ could have found that Drs. Childs and Brewer simply did not have the requisite familiarity, length, and regularity of treatment to support such "considerable weight." In addition, the medical opinion in *Smith* was much firmer than those in this case. There, the treating physician, when asked whether he had an opinion as to whether the claimant would ever be able to engage in work again stated, "I don't think he can." *Id*. As noted earlier, the physicians in this case did not rule out Plaintiff's ability to work at a lower level of exertion in the future. Plaintiff's cited cases do not change this Court's conclusion that substantial evidence supports the ALJ's decision to give minimal weight to the opinions of Plaintiff's treating physicians, Drs. Brewer and Childs.

C.  Plaintiff's Ability to Bend

Finally, Plaintiff asserts that the ALJ erred by determining that the plaintiff can occasionally bend. (Doc. 8 at 14.)  The ALJ found that the plaintiff retains the residual functional capacity to perform light work, but he is restricted to "occasional bending, stooping, and climbing." (Tr. at 32.)  Plaintiff relies on his testimony that he can stand in front of the sink for only five minutes before his back starts to hurt. (Tr. at 45.)

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).  To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).  The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir.

2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (*quoting Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (internal quotations omitted).

Plaintiff cites no other medical opinion, or objective medical evidence supporting his claim that he is unable to bend. On the other hand, as the Commissioner notes, Dr. Roberts found that Plaintiff could stoop, squat, and bend without difficulty during his examination of Plaintiff. (Tr. at 338.) The ALJ relied on Dr. Roberts's report and the other evidence of record to find that "the objective, clinical records fail[] to corroborate the degree of symptoms alleged in this case." (Tr. at 31.) The ALJ specifically noted Dr. Roberts's finding that Plaintiff had no deficits in strength or reflexes, normal gait, a negative bilateral straight leg raising test, and full range of motion. (*Id.*) While the plaintiff has medical conditions that might support

disabling pain, it appears to the Court that the ALJ sufficiently addressed Plaintiff's allegations of pain, and he provided explicit and reasonable reasons for his conclusion that Plaintiff can perform light or sedentary work that requires only occasional bending.

Plaintiff also cites the vocational expert's testimony at his administrative hearing that if he can do no bending, he can do no light, medium, or sedentary work. (Tr. at 65.)  The vocational expert's testimony on this point does not help Plaintiff because it is well-established that an ALJ does not have to consider hypothetical questions based on testimony that he has properly discredited. *See Crawford*, 363 F.3d at 1161; *Gordon v. Astrue*, 249 F. App'x 810, 813 (11th Cir. 2007) (citing *Crawford* favorably and also finding that ALJ's hypothetical questions based on "the medical evidence and other evidence on the record that the ALJ found to be credible" was complete).

## IV.    Conclusion

Upon review of the administrative record, and considering all of Mr. Gordon's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered.

Done this <u>22nd</u> day of <u>March 2013</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

[160704]